**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Sally Swanstrom,**

**Plaintiff,**

**v.**

**Liberty Mutual Insurance Co.,**

**Defendant.**

**Civil No. 01-2299 (DSD/SRN)**

**ORDER**

---

James H. Kaster, Esq., on behalf of Plaintiff

David J. Duddleston, Esq., on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on on Plaintiff's Motion for Sanctions (Doc. No. 14-1) and to Extend Discovery Schedule (Doc. No. 14-2); and Motion to Compel Discovery (Doc. No. 16). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court grants Plaintiff's motion to compel as limited below and to extend the discovery schedule.

**BACKGROUND**

Plaintiff has brought claims for sex discrimination and harassment under Title VII, 42 U.S.C. § 2000e et seq. and the Minnesota Human Rights Act. Plaintiff claims that she was subjected to repeated sexual harassment by Defendant's employees including her supervisors,



NOV 0 4 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

and that she was discriminated against because of her sex.

## I. MOTION TO COMPEL DISCOVERY

Plaintiff requests five types of information: (1) other employee complaints; (2) a description of the investigation conducted by Defendant; (3) email sent and received since January 1, 1999 for five different individuals; (4) any documents of a sexual nature maintained by Defendant or its employees at its Minneapolis office; and (5) documents summarizing potential customer assignments for sales associates in Defendant's Minneapolis office. The specific requests are set forth below:

1. Interrogatory # 6: State whether other employees, past or present, have alleged that employees of Defendant have engaged in discrimination or harassment based on gender or sex, and if so, identify the following:
   (a) the person involved;
   (b) the nature of the complaint;
   (c) the factual allegations asserted;
   (d) the investigation and resolution of the alleged complaint;
   (e) the title and case number of any lawsuit that arose from the complaint.

2. Interrogatory # 12: Describe in detail any investigation conducted by the Defendant into Plaintiff's allegations of discrimination and/or harassment, the individuals who conducted the investigation, all investigative steps taken, the identity of all individuals interviewed as part of the investigation, the conclusions reached at the end of the investigation and any action taken by Defendant as a result of the investigation.

3. Requests # 1-5: All e-mails received or sent by Timothy Greifenkamp, Daniel Bilancia, Bradley Reed, Joseph Weligman, and Gerry Ball from any e-mail account maintained by Defendant from January 1, 1999 on.

4. Request # 6: Any and all documents . . . containing material of a sexual nature, explicit or otherwise, maintained by Defendant or its employees at 701 Xenia Avenue South, Minneapolis, Minnesota during Plaintiff's employment.

5. Request # 7: Any and all documents . . . which summarize or demonstrate potential customer assignments for all sales associates located at Defendant's 701 Xenia Avenue South, Minneapolis, Minnesota location since January 1, 1999.

**A. Interrogatory #6: Other Employee Complaints**

Plaintiff argues that "[e]vidence of similarly situated employees who have also been subject to discrimination is relevant to show an atmosphere of discrimination or a hostile work environment." Defendant responds arguing: (1) that the request is overbroad because it asks for all complaints without regard to position, time, location, or whether the employees are similarly situated, and (2) Plaintiff has failed to show that her need outweighs the privacy interests of the other employees.

The information Plaintiff requests appears to be relevant to show an atmosphere of discrimination and/or a hostile work environment. "Relevancy," in the context of discovery under the Federal Rules of Civil Procedure, is broadly construed, e.g., Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635 (D. Minn. 2000) ("The standard, therefore, is widely recognized as one that is necessarily broad in its scope . . . ."), and is a less exacting standard than the relevancy required for the admissibility of evidence at trial. E.g., Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Thus, complaints by other employees that Defendant discriminated or harassed them are potentially relevant to show that Defendant also subjected Plaintiff to a hostile work environment. Discovery of such information does not fall into the labyrinth of a fishing expedition.

Although relevant, the scope of Plaintiff's request must be narrowed. As Defendant points out, Plaintiff's request is not limited by time, location, or to employees that are reasonably similarly situated and such limits are needed. Thus, Plaintiff is entitled to the information she requests in interrogatory #6 for the time period beginning with March 29, 1999 to the present, with regard to employee complaints at Defendant's 701 Xenia Avenue South, Minneapolis,

Minnesota office, from other employees that had the same supervisors as Plaintiff.

Privacy is a weighty concern when a court orders employee personnel files divulged. Here, however, this Court is not ordering the production of employee personnel files. Rather, this Court is ordering Defendant to respond to Plaintiff's request that only includes (a) the person involved in a complaint; (b) the nature of the complaint; (c) the factual allegations asserted; (d) the investigation and resolution of the alleged complaint; (e) the title and case number of any lawsuit that arose from the complaint. Thus, many of the cases Defendant's cite, Onwuka v. Federal Express Corp., 178 F.R.D. 508 (D. Minn. 1997); Raddatz v. Standard Register Co., 177 F.R.D. 446 (D. Minn. 1997), in support of their argument that Plaintiff bears a heavy burden of showing her need outweighs the privacy interests of non-party employees are distinguishable. Plaintiff will not have unfettered access to Defendant's employee's personnel files, let alone an employee's most private information such as "income information, medical histories, employment discipline, or criminal records." Raddatz, 177 F.R.D. at 447. Moreover, Raddatz and Onwuka actually support this Court's order since in both of those cases the court, while limiting the discovery requests, allowed the production of information very similar to that which this Court is allowing. See generally id. ("[T]he Defendant shall provide the Plaintiff with the following information, which concerns each district sales manager who was terminated by the Defendant during those four years period: 1. Their identities, their ages at the time of termination, and their dates of birth; 2. Their current addresses and phone numbers, if this information is in the Defendant's possession, otherwise, their last known addresses and phone numbers; 3. The reasons for their terminations; and 4. Their salaries at the time of termination."); Onwuka, 178 F.R.D. at 517-18 ("[T]he fact that the inquiry impinges upon the privacy interests

of third-parties argues against the unconstrained production of these records but, unlike the sweeping requests for personnel files, which have been received by the Courts with mounting disfavor, here the Plaintiff's request only seeks the co-employee information that relates to discipline . . . ."). Moreover, the information Defendant must produce will be subject to a protective order that will provide more than adequate protection for the privacy of the non-party employees.[1]

Accordingly, Defendant is instructed to produce the information requested in Plaintiff's interrogatory #6 as it only requests information relevant to Plaintiff's claims. Such information shall be limited to the time period of March 29, 1999 to the present and shall be further limited to those complaints received from employees who had the same supervisors as Plaintiff at Defendant's 701 Xenia Avenue South, Minneapolis, Minnesota office.

**B. Interrogatory #12: Description of the Investigation Conducted**

Plaintiff argues that the investigation is not protected by the work product doctrine because the "[f]acts concerning the investigative steps taken, the scope of the investigation,

---

[1] Again, Defendant's citation to Raddatz for the proposition that not even a protective order can quell the privacy concerns of producing non-party employees' personnel files is misplaced. First, here, entire personnel files are not being produced as was requested in Raddatz. Raddatz, 177 F.R.D. at 447. Second, the same district court, by order of the same Magistrate Judge, on the very same day came to the exact same conclusion as this Court has:

> We think the proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure and, then, subject to an appropriate Confidentiality Order as the circumstances require.

Onwuka, 178 F.R.D. at 517.

conclusions reached, and any disciplinary steps taken are not tangible items or documents." Plaintiff also argues that the information sought was not prepared in anticipation of litigation because a resolve to litigate was not established prior to the investigative efforts; rather, it was conducted in the regular course of business. Plaintiff's final argument is that Defendant is using the investigation as a shield and sword by asserting it as an affirmative defense and then not disclosing its contents. Defendant responds arguing that such information is protected by the attorney client privilege and the work product doctrine. Defendant argues that Plaintiff has made no showing of substantial need and can obtain such information through normal discovery methods rather than forcing Defendant to open its legal files.

**1. Attorney-Client Privilege**

In cases brought under federal question jurisdiction, as here, attorney-client privilege issues are governed by federal common law. FED. R. EVID. 501; see also United States v. Simmons, 964 F.2d 763, 768 (8th Cir. 1992) (citing 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶¶ 501[02] (1991)); Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 458 (N.D. Cal 1978) (noting that federal common law applies to all claims where there is a federal question and a pendent state law claim). It is well established that the attorney-client privilege applies to corporations and its employees. Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1981); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 608-10 (8th Cir. 1977) (en banc). In Upjohn, the Supreme Court declined to fashion a bright-line rule for when the privilege applies in the corporate context; rather, the Court explained that decisions should be made on a case-by-case basis guided by its reasoning. Upjohn Co., 449 U.S. at 396-97. In addition, the Eighth Circuit's decision in Diversified Indus., Inc. "was cited favorably in Upjohn

and continues to be a source of guidance in conjunction with Upjohn." Ellenberg v. Tuffy's Div. of Starkist Foods, Inc., 2 Fed.R.Serv.3d 827, Civ. No. 4-84-883, 1985 WL 1559, at *4 (D. Minn. June 5, 1985). Diversified Indus., Inc. provides the following guidance:

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

572 F.2d at 609.

The attorney-client privilege, however, "may also be implicitly waived . . . and one way that is done is by raising attorney advice as a defense." United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998). Where an attorney conducts an investigation of a claim for a party/client and the party/client relies on the adequacy of the attorney's investigation as an affirmative defense to the claim investigated, fairness dictates that the attorney-client privilege is waived. McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 243-45 (E.D.N.Y. 2001); Brownell v. Roadway Package Sys., 185 F.R.D. 19 (N.D.N.Y. 1999); Harding v. Dana Transp., Inc., 914 F.Supp. 1084 (D.N.J. 1996); see also Workman, 138 F.3d at 1263-64 ("The attorney client privilege cannot be used as both a shield and a sword . . . ."); U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); Sedco Int'l, S.A., v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982) (quoting with approval Dean Wigmore's statement that "waiver is to be predicated . . . when the conduct . . . places the

claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege").

This Court has little trouble concluding that the attorney-client privilege applies to Defendant's employees' communications during the investigation. After Plaintiff initiated an Equal Employment Opportunity Commission (EEOC) charge, Defendant's in-house attorneys initiated an investigation into Plaintiff's claims wherein numerous employees where interviewed. The applicability of the privilege is not dispositive, however, if Defendant waived the privilege.

Plaintiff has asserted, among others, a Title VII hostile work environment claim. Employers can be held vicariously liable to employees who are subjected to a hostile work environment by supervisors or others in a position of authority. Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). "When no tangible employment action is taken, [however,] a defending employer may raise an affirmative defense to liability or damages . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. In Defendant's answer, it has pleaded the Faragher-Ellerth affirmative defense. Thus, to the extent that Defendant intends to rely on its investigation to prove that it took reasonable care to correct any sexually harassing behavior, it has placed the sufficiency of that investigation and the sufficiency of its response in light of what it learned in the investigation at issue. E.g., Brownell, 185 F.R.D. at 25 ("[B]y asserting the adequacy of its investigation as a defense to Plaintiff's allegations, Defendant has implicitly waived the attorney-

client privilege by placing the investigation 'in issue.'"). Fairness and consistency in access to proof forbids Defendant's retention of the privilege in this case. E.g., Cory, 683 F.2d at 1206 (quoting with approval Dean Wigmore enunciation of implied at-issue waiver and noting the two elements to be examined with an implied waiver (1) implied intention and (2) fairness and consistency).

Moreover, Defendant has apparently produced some selected documents from the investigation file as well as information it provided in its brief answer to interrogatory #12. Defendant cannot produce parts of privileged information that are beneficial to it while withholding potentially damaging information. E.g., United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998); U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). For instance, in Workman, as a defense the defendant asserted that he relied on the advice of an attorney in inappropriately cashing government checks. Workman, 138 F.3d at 1263-64. The defendant used certain parts of his conversation with his attorney but asserted the attorney-client privilege for all other aspects of the conversation. Id. There, the Eighth Circuit stated:

> Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with [his attorney] for his own benefit. U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). The attorney client privilege cannot be used as both a shield and a sword, id., and Workman cannot claim in his defense that he relied on [his attorney's] advice without permitting the prosecution to explore the substance of that advice.

Id.

Furthermore, this Court finds the reasoning of other federal district courts that have applied the fairness doctrine to Title VII cases, nearly identical to the present, persuasive. McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 243-45 (E.D.N.Y. 2001) (citing

U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)); Brownell v. Roadway Package Sys., 185 F.R.D. 19, 25 (N.D.N.Y. 1999); Peterson v. Wallace Computer Servs. Inc., 984 F.Supp. 821, 824-26 (D. Vt. 1997); Dana Transp., Inc., 914 F.Supp. 1084, 1096 (D.N.J. 1996). In these cases, the court ordered the production of a company's post-harassment investigation file over attorney-client privilege and work product objections because the company had placed the investigation at issue and fairness required production. McGrath, 204 F.R.D. at 243-46; Brownell, 185 F.R.D. at 25-26; Peterson, 984 F.Supp. at 824-26; Harding, 914 F.Supp. at 1096.

**2. Work Product**

The work product doctrine protects those materials produced in anticipation of litigation. FED. R. CIV. P. 26(b)(3). There are two types of work product–ordinary/factual and opinion. E.g., In re Murphy, 560 F.2d 326, 334, 336 (8th Cir. 1977). Ordinary work product may be discovered by a showing of substantial need and an inability to obtain such materials without undue burden. Id.; FED. R. CIV. P. 26(b)(3). Opinion work product, however, "is entitled to substantially greater protection than ordinary work product." Id. at 336. "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Id. "The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002) (citing Hickman v. Taylor, 329 U.S. 495 (1947)).

"The work product privilege is not absolute and may be waived." Id. "The work product doctrine is to be applied in a commonsense manner in light of reason and experience as

determined on a case-by-case basis." Pittman v. Frazier, 129 F.3d 983, 988 (8th Cir. 1997). In determining if a waiver of the privilege has occurred, a "Court must not only look at whether [Defendant] intended to waive the privilege, but also whether the interests [of] fairness and consistency mandate a finding of waiver." E.S. Originals, Inc., 281 F.3d at 732. For instance, "[w]hen a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way." Id. (quoting In re Sealed Case, 676 F.2d 793, 818 (D.D.C. Cir. 1982)).

This Court has little trouble concluding that the work product privilege applies to Defendant's investigation files. "'[I]n light of the nature of the document (an investigation of sexual harassment) and the factual situation in the particular case (investigating to respond to an EEOC charge), the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Simon, 816 F.2d at 401 (citations omitted).

As discussed above, however, Defendant has placed its investigation file at issue, and any privilege that may apply to a description of that file "must give way." E.S. Originals, Inc., 281 F.3d at 732. The information sought by Plaintiff is crucial to her ability to rebut Defendant's affirmative defense that it took reasonable care to correct the harassing behavior. It would be fundamentally unfair for Defendant to rely on its investigation for the proposition that it took reasonable remedial action while at the same time shielding the very investigation upon which it relies from inspection. Such a sword/shield stance is one that is neither fair to Plaintiff nor the fact-finder as it extinguishes "society's interest in revealing all true and material facts relevant to the resolution of a dispute," E.S. Originals, Inc., 281 F.3d at 732.

Again, this Court finds entirely persuasive other decisions by federal district courts that

have addressed this very issue and come to the same conclusion. See McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001); Brownell v. Roadway Package Sys., 185 F.R.D. 19, 26 (N.D.N.Y. 1999); Peterson v. Wallace Computer Servs. Inc., 984 F.Supp. 821, 826-27 (D. Vt. 1997); Harding v. Dana Transp., Inc., 914 F.Supp. 1084, 1099 (D.N.J. 1996).

The cases cited by Defendant in support of its argument that its investigation files are protected by the work product privilege are distinguishable because in those cases the investigation was not put in-issue or relied on as supporting an affirmative defense. For an example of the cases see, Gundacker v. Unisys Corp., 151 F.3d 842, 845, 848 (8th Cir. 1998); Pittman v. Frazier, 129 F.3d 983, 987-88 (8th Cir. 1997).

The Court, however, does not hold that opinion work product has been waived–just fact or ordinary work product. Defendant need only provide a description of those portions of its investigation that constitute ordinary or fact work product, and, accordingly, Defendant need not describe "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of [Defendant] concerning the litigation." FED. R. CIV. P. 26(b)(3). Such a description must include, but is not limited to, the interview statements of Sally Swanstrom, Gerry Ball, Cathy Wirrer, Dan Bilancia, Tim Griefenkamp, Brad Reed, Jonathon Newberry, Scott Gronholz, Sue Rassch, Joe Weligman, and Brian McCarthy; any factual records of Plaintiff's complaints of harassment or discrimination contained in the investigation file; or any internal response to Plaintiff's complaints. Accordingly, Defendant shall fully answer Interrogatory #12 describing every part of the investigation of Plaintiff's harassment and

discrimination complaints that constitutes ordinary or fact work product as described above.[2]

**C. Requests #1-5: Emails**

Plaintiff argues that emails sent by the named individuals "may provide examples of sexual harassment and may provide evidence to substantiate the incidents and complaints of sex discrimination." Plaintiff also argues that she is entitled to examine the emails to refute anticipated defenses that Plaintiff welcomed the harassment because Defendant has produced three emails sent by Plaintiff that were of an allegedly sexual nature. Defendant responds arguing that the request is overbroad, merely meant to harass, and that the requested documents have absolutely no relevance to Plaintiff's claims. In support of its argument, Defendant explains that the request asks for "every e-mail sent of these five people for nearly four years, even though she does not claim she received any e-mail she considered offensive from any of these individuals." In addition, Defendant states that Plaintiff did not even work for Defendant during part of the time period requested. Defendant argues that a much more narrowed request, if any is granted, is necessary.

The requested emails may indeed be relevant to Plaintiff's claims. Plaintiff is requesting emails sent or received only from the persons she has alleged harassed her or from the persons to whom she complained about the harassment. These emails are relevant for at least three reasons: (1) they may shed light on the response Defendant made to Plaintiff's complaints; (2) they may

---

[2] After reviewing Plaintiff's memorandum and accompanying documents, it was unclear whether Plaintiff was requesting the production of all documents responsive to Interrogatory #12. Accordingly, it appears the only request before this Court is that for a description of the investigation, although, production of those portions of the investigation file constituting ordinary work product could clearly be ordered given the above analysis.

substantiate the complained of harassment or discrimination; and (3) they may also show an atmosphere of harassment or discrimination internally among the named individuals. Thus, the emails are relevant irrespective of whether Plaintiff received a harassing email.

Although courts do allow discovery of company records to encompass a period of time before the time of the alleged harassment or discrimination, e.g., Onwuka, 178 F.R.D. at 517; Miles v. Boeing Co., 154 F.R.D. 117, 119-20 (E.D. Pa. 1994), the time period for Plaintiff's request shall be narrowed to between March 29, 1999 and the present.

There are three options as to how the emails shall be produced, two of which alleviate much, if not all, of any burden imposed on Defendant. First, Plaintiff has offered to, at no cost to Defendant, have her own computer specialist copy the emails from Defendant's computers. Second, the parties could agree on a word(s), phrase, and name search and produce only those emails that match the search. Third, Defendants could simply produce all of the emails. In addition, any emails produced, given the concern that such emails may also contain business plans shall be considered confidential and subject to the protective order of this Court.

**D. Request #6: Documents of a Sexual Nature**

Plaintiff argues that such request is "directly relevant to prove her claim of sexual harassment and hostile work environment." Defendant responds that as a business it certainly does not maintain information of a sexual nature and Plaintiff does not even allege that she was subjected to any sexual material during her employment. In addition, Defendant would have to search every file, desk, cabinet, etc. which would be burdensome.

The existence at Defendant's Minneapolis office of any documents, pictures, etc. of a sexual nature is plainly relevant to an objective determination of whether Plaintiff was subjected

to a hostile working environment. Thus, Defendant shall comply with this request. This request is not as burdensome as Defendant claims considering it can satisfy its duty by, for example, sending an office-wide memo requesting employees to examine their workspace for any such items.

**E. Request #7: Documents Summarizing Potential Customer Assignments for Sales Associates**

Plaintiff argues that such data is "relevant to her claims of sex discrimination." Plaintiff also alleges that she was not allowed to attend a customer dinner because of her sex. Defendant responds arguing that such request is clearly overbroad because it "basically asks for all of Liberty's records in the operation of its business." Further, Defendant argues that Plaintiff has not even made a claim that her work assignments were discriminatorily made. Therefore, Defendant argues such a fishing expedition is not warranted.

Given the fact that Plaintiff has alleged she was not allowed to attended a dinner for customers and potential customers of Defendant because she was a woman, the information Plaintiff requests seems potentially relevant to her claims of sex discrimination. Moreover, Defendant admits that Plaintiff was asked not to attend the dinner. Defendant just denies that the reason Plaintiff was asked not to attend was because she was a woman.

The Court, however, is mindful that this request might be burdensome. Thus, Defendants shall produce documents which summarize or are *sufficient* to demonstrate potential customer assignments for all sales associates located at Defendant's 701 Xenia Avenue South, Minneapolis, Minnesota location since March 29, 1999.

"The imposition of unnecessary limitations on discovery is especially frowned upon in

Title VII cases." Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir. 1983). Accordingly, this Court will not prohibit Plaintiff from seeking information that appears to be relevant to her fully illuminating the merit of her claims.

## II. MOTION FOR SANCTIONS

This motion has been withdrawn.

## III. MOTION TO EXTEND DISCOVERY SCHEDULE

Plaintiff's motion to extend the discovery schedule is granted. The discovery schedule shall be extended to December 15, 2002.

**THEREFORE, IT IS HEREBY ORDERED that:**

**1.** Plaintiff's Motion for Sanctions (Doc. No. 14-1) has been **WITHDRAWN**.

**2.** Plaintiff's Motion to Extend Discovery Schedule (Doc. No. 14-2) is **GRANTED**. As reflected in the Amended Pretrial Scheduling Order, the period for discovery shall be extended until December 15, 2002.

**3.** Plaintiff's Motion to Compel Discovery (Doc. No. 16) is **GRANTED** with the limitations provided herein.

Dated: November, 1 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge